*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL J. JAKUBOWSKI, JR.,

        Defendant-Appellant.

UNPUBLISHED
December 22, 2022

No. 357999
Schoolcraft Circuit Court
LC No. 19-006959-FH

Before: PATEL, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant, Michael J. Jakubowski, Jr., appeals as of right his jury-trial conviction of accosting a child for immoral purposes, MCL 750.145a. The circuit court sentenced defendant to five years' probation and required him to serve six months in jail with the first 30 days to be served immediately and the remainder to be held in abeyance. We affirm.

## I. BACKGROUND

Defendant's conviction arises from an incident that occurred in February 2019, when defendant messaged his niece EE on Snapchat.[1] At trial, defendant stipulated that he was over the age of 17[2] and EE was 13 years old when their exchange occurred. The messages included defendant

- asking EE if she "ever had a dick";

- asking EE if she had ever seen one after she indicated that she did not plan on it, and defendant further opining that someday she might;

---

[1] Snapchat is "a social-media platform that allows users to send pictures, with or without text, that can be viewed by the user's registered 'friends' for 24 hours before the image disappears," *People v Gerhard*, 337 Mich App 680; 976 NW2d 907 (2021), unless the user saves it.

[2] Defendant was 34 years old.

- proposing that EE and defendant drink together in the future;

- offering to show EE what "cum" looked like, if she wanted;

- showing EE "anything [she] want[ed]" so long as it "stay[ed] between them;

- explaining to EE what it meant to be "horny";

- having EE send a full-body picture, telling her she appeared 16 years old from her facial features;

- informing EE that he would not use her picture for "that" because he had the Internet;

- asserting that if he wanted to use EE's picture in that manner he would ask her permission "and see if [she] wanted anything in return," adding that the photograph sent to him "would have to be very reve[a]ling for [him] to [d]o that";

- stating he had second thoughts about going to bed and might "have to find a video and take care of something," inquiring whether LE, who was EE's sister and babysitting for defendant's family that night, would sleep through it; and

- inquiring whether EE had ever sent a "naughty pic," after informing her that he was "not af[r]aid to send videos as []long as [he] got something good in return" and explaining that he had "done it before[.]"

After their communications ended, EE's concern over the portion of the message related to her sister LE led EE to go to her mother and reveal, in part, the exchange EE had with defendant.

LE, who was 17 years old on February 6, 2019, confirmed she was babysitting defendant's children. After defendant put his children to bed, LE initiated a discussion with defendant about her sexual history. LE also talked about EE imbibing in alcohol and marijuana. Defendant began showing LE comical adult memes, including one depicting what happens to testicles in the summer as opposed to in the winter. No actual body parts were shown, but this interaction made LE feel uncomfortable.

LE's back hurt and she attempted to go upstairs; however, defendant grabbed her, pulled her onto his lap, and began massaging her back. LE managed to free herself, ran upstairs, and closed the bedroom door. Over an hour later, LE's mother called and repeatedly directed LE to lock the door of the bedroom LE was using at defendant's home, which LE did.

Defendant's stepsister KK also testified at trial. In 1996, when KK was five years old and defendant was 12 years old, he would expose himself to her, ask her to touch him, and he would touch her with his hands and mouth. Defendant would caution her against telling anyone. Despite this, KK eventually disclosed, leading to punishment for defendant and a discussion that such behavior was inappropriate.

While defendant's activities stopped for a short time, unbeknownst to their parents, defendant continued to touch KK, tried to convince her to have sex with him, and wanted to teach her about sex. This continued for years. Defendant took KK's underwear and masturbated with it. He removed KK's clothing, masturbated, and then asked KK if she wanted to touch his ejaculate. Still later, defendant brought a bowl of ejaculate to KK and asked if she wanted to touch and play with it. This happened up until the time KK was 12 or 13 years old and defendant was 18 or 19 years old. Defendant also continued to expose himself to KK, masturbated, and asked to watch her masturbate. After KK entered high school, she refused to allow defendant to touch her, but he continued to ask her what would have happened had their parents discovered what subsequently occurred between them.

Even though KK had made some disclosures to friends, she never reported defendant's acts to the police until she learned that defendant was arrested for sending messages to EE. KK readily agreed that defendant never sent her text messages, Snapchats, or videos, and that he never requested nude photographs from her because "[n]one of those things existed."

At trial, defendant conceded that he sent the messages to EE, but maintained that he lacked the requisite specific intent to commit the crime. Defendant testified that he never intended to have sex with EE, never intended to request nude pictures of EE, never intended to take EE out drinking, never sent EE nude pictures, and never received nude pictures from EE. Defendant further explained that he was involuntarily intoxicated from taking four 200-milligram Tylenol pills earlier in the day and drinking Pepsi mixed with 30-proof alcohol that evening. Due to his work schedule, lack of sleep, and consumption of Tylenol as well as the liquor, defendant did not remember anything after he began drinking. Defendant's memory was not refreshed when his wife told him about the messages the following morning.

But EE testified that she had asked defendant whether he was drunk during their conversation. Defendant responded that he had "a little buzz," noting his drink was "mad strong." When EE replied that she thought defendant was "pretty buzzed," he answered "[n]ot really," and added that he had "alittle [sic] one."

LE also testified that she had observed defendant having a cup of alcohol when she was downstairs. At that time, defendant did not appear to be drunk. He did not slur his words, but spoke clearly and normally.

Regarding defendant's stepsister, defendant testified that they engaged in sexual experimentation when he was between the ages of 11 to 13. Upon their parents' discovery, defendant was grounded for a month and the experimentation stopped. In response to KK's testimony about defendant's actions while she was in the sauna, defendant did not remember any specific incidents, but later admitted he could have peeked at KK or sprayed water on her while she was in the sauna. Even so, they had no sexual contact.

After deliberating for approximately 17 minutes, the jury convicted defendant as charged.

## II.  OTHER-ACTS EVIDENCE

Defendant argues that the trial court abused its discretion by admitting other-acts evidence under MCL 768.27a.[3]  Defendant further contends that the trial court abused its discretion by failing to conduct an evidentiary hearing on the other-acts evidence before trial.  We disagree.

## A.  THE FAILURE TO CONDUCT AN EVIDENTIARY HEARING

Defendant contends that the trial court failed to hold an evidentiary hearing on the other-acts notice provided by the prosecution.  Defendant posits that if counsel had had the opportunity to question KK at this evidentiary hearing, it would have become clear that KK would have asserted she had not been in contact with defendant since he moved out of his father's and stepmother's home.[4]  On that point, defendant contends his wife and brother would have refuted KK's testimony as evidenced by their postappeal affidavits.[5]  Thus, defendant reasons that the failure to hold an evidentiary hearing on the other-acts evidence denied him the ability to effectively prepare a defense and denied him a fair trial.  We disagree.

In pertinent part, MCL 768.27a(1) provides:

> If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good

---

[3] In relevant part, MCL 768.27a(1) provides:

> [I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.

A minor is a person under 18.  MCL 768.27a(2)(a).  A listed offense is defined in the sex-offender registration act, MCL 28.722.  MCL 768.27a(2)(b).  Accosting, enticing or soliciting a minor for immoral purposes is a listed offense.  MCL 28.722(t)(*i*).  And defendant does not dispute that the acts KK described were also listed offenses.

[4] Review of the transcript page cited by defendant reveals that KK testified that she did not speak to defendant, but it provides no timeframe.

[5] We cannot consider these affidavits.  Doing so would be an impermissible expansion of the lower-court record.  See MCR 7.210(A); *People v Morrison*, 320 Mich App 647, 655; 939 NW2d 728 (2019).  Moreover, defendant's unnotarized affidavits are procedurally insufficient.  An affidavit is "[a] voluntary declaration of facts written down and sworn to by a declarant, usu[ally] before an officer authorized to administer oaths." *Black's Law Dictionary* (11th ed).  "[N]ot being notarized or otherwise having been taken before a person having authority to administer an oath or affirmation, the document carries no more weight than a letter . . . ."  See *People v Ybarra*, 493 Mich 862, 909-910; 820 NW2d 908 (2012) (ZAHRA, J., concurring).

cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

The record reflects that the prosecution timely provided the defense with a police report[6] filed by KK. Defense counsel did not express any concern with the content or sufficiency of the notice provided below. Nor did defense counsel request an evidentiary hearing on the substance of the other-acts evidence; instead, he requested a hearing on his objection to the admission of the other-acts evidence, which the trial court provided. The attorneys, not the trial court, are vested with the discretion to request an evidentiary hearing because "it is the lawyers who are responsible for the introduction of evidence and the presentation of motions." *People v Kaufman*, 457 Mich 266, 275; 577 NW2d 466 (1998). The record below reflects that the defense was fully apprised regarding the other-acts evidence as to KK. Therefore, defendant's ability to prepare a defense was not impaired and he was not denied his right to a fair trial.

## B. ADMISSIBILITY OF THE OTHER-ACTS EVIDENCE

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion."[7] *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012).

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *Thorpe*, 504 Mich at 252. See also MRE 103(a)(1). Defendant objected to the admission of the other-acts evidence by filing a motion to exclude it. He argued that the other-acts evidence was irrelevant due to its dissimilarity to the facts underlying the instant case and the failure of KK's allegations to result in criminal charges or convictions. Defendant also objected that the other-acts evidence should be excluded because any probative value it had was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See MRE 403. Consequently, defendant preserved this issue, and, "[i]f an error is found, defendant has the burden

---

[6] This report is not contained in the lower record.

[7] Defendant implies that this appeal involves a constitutional question in his statement of the standard of review. But "[m]erely framing an issue as constitutional does not make it so." *People v Blackmon*, 280 Mich App 253, 261; 761 NW2d 172 (2008). Further, an evidentiary error constitutes a nonconstitutional error. *People v Herndon*, 246 Mich App 371, 402 n 71; 633 NW2d 376 (2001). Regardless, an unpreserved constitutional error requires the defendant to "show a plain error that affected substantial rights" and "[t]he reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). And "for the admission of other-acts evidence to violate due process, it must be "so extremely unfair that its admission violates 'fundamental conceptions of justice.' " *Dowling v United States*, 493 US 342, 352; 110 S Ct 668; 107 L Ed 2d 708 (1990), quoting *United States v Lovasco*, 431 US 783; 97 S Ct 2011; 52 L Ed 2d 752 (1977).

of establishing that, more probably than not, a miscarriage of justice occurred because of the error." *People v Knapp*, 244 Mich App 361, 378; 624 NW2d 227 (2001). See also *Thorpe*, 504 Mich at 252 (citation omitted).

On appeal, defendant no longer argues that KK's allegations lacked probative value. Instead, defendant asserts that the court abused its discretion when it concluded that the probative value of this evidence was not substantially more prejudicial than probative under MRE 403.

Our Supreme Court has outlined several considerations that may lead a court to exclude other-acts evidence under MRE 403 when deciding whether to admit such evidence under MCL 768.27a, including "(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony." *Watkins*, 491 Mich at 487-488. These considerations are "illustrative rather than exhaustive." *Id*. at 488. Because they "provide a tool to facilitate, not a standard to supplant, . . . [a] proper MRE 403 analysis, [] it remains that court's 'responsibility' to carry out such an analysis in determining whether to exclude MCL 768.27a evidence under [MRE 403]." *People v Uribe*, 499 Mich 921; 878 NW2d 474 (2016).[8]

Defendant cursorily argues that review of the six non-exhaustive *Watkins* considerations indicates that the proposed other-acts evidence was excludable under MRE 403, and specifically identifies considerations 1, 2, 4, and 6 as weighing heavily against admissibility. Defendant also asserts that the other-acts evidence was "of a more severe and offensive nature than the charged act," increasing the danger of unfair prejudice as it relates to his right to a fair trial.

The trial court directly addressed each of the *Watkins* considerations. It determined that there was similarity between the other acts and the charged crime, including defendant requesting that the interaction be kept secret, defendant offering to share his sexual knowledge, defendant discussing masturbation, and defendant's familial relationship with EE and KK. And, although there was a 23-year gap between defendant's initial interaction with KK and the messaging with EE, the acts with KK went on for a number of years, up to the time KK was 12 or 13 years old and defendant was 18 or 19 years old. In the trial court's view, nothing demonstrated that KK's allegations lacked reliability, even though they had yet to result in criminal charges or convictions. The trial court then concluded that there was no danger of unfair prejudice, confusion of the issues, or misleading the jury, and that the jury instructions would alleviate any concerns.

As testified to at trial, the other-acts evidence bore numerous similarities to those discussed in the messages to EE, including those identified by the trial court. And while the other acts' proximity was distant, the trial court did not abuse its discretion by deciding that the probative value of the other-acts evidence was not substantially outweighed by its prejudicial effect. See

---

[8] Although *Uribe* is an order from our Supreme Court, such orders constitute binding precedent when the decision includes an understandable rationale. *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006).

*Watkins*, 491 Mich at 487-488; *People v Starr*, 457 Mich 490, 499-500; 577 NW2d 673 (1998) ("The danger the rule seeks to avoid is that of unfair prejudice, not prejudice that stems only from the abhorrent nature of the crime itself.").

## III. PROSECUTORIAL ERROR[9]

Defendant argues he was denied a fair and impartial trial by two instances of prosecutorial error. We disagree.

### A. THE PROSECUTOR'S REMARK

When the prosecutor cross-examined defendant, defendant denied any memory regarding the messages he had sent. The prosecutor remarked: "See, cause here's – here's where I have a problem with that. Is that you're making sense." Defense counsel objected that the prosecutor had not asked a question, which the trial court sustained.

We review a preserved claim of prosecutorial error "de novo to determine whether the defendant was denied a fair trial." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). Such claims "are reviewed on a case-by-case basis." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). "A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *Id*.

Initially, we observe that because the court sustained defendant's objection to the prosecutor's remark, defendant is not entitled to further relief. See *People v Miller (After Remand)*, 211 Mich App 30, 42-43; 535 NW2d 518 (1995). Regardless, there is no basis to conclude that the prosecutor's rather innocuous comment that defendant was "making sense"[10] in the messages he had sent to EE denied defendant a fair trial. Although the trial court did not immediately instruct the jury to disregard the prosecutor's comment, it sustained defense counsel's objection and it later instructed the jury that "[t]he lawyer's statements, arguments, and any commentary, are not evidence." The trial court also reminded the jury that it was to decide the case upon the evidence admitted. The jury is presumed to have followed its instructions and "jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020). Accordingly, the prosecutor's comment did not deprive defendant of a fair trial. See *People v*

---

[9] The parties refer to this issue as prosecutorial misconduct, but this Court has explained that prosecutorial misconduct is a term reserved for "those extreme—and thankfully rare—instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). When the conduct of a prosecutor does not warrant discipline, but instead constitutes "a technical or inadvertent error at trial," the claim is that of prosecutorial error. *Id*. at 88. Because defendant's claims relate to errors at trial that do not warrant discipline of the prosecutor, we refer to the claim as one of prosecutorial error.

[10] The prosecutor had made the same observation earlier without objection.

*Mosko*, 441 Mich 496, 503; 495 NW2d 534 (1992) (A criminal defendant is entitled to a fair trial, not a perfect one.).

## B. THE PROSECUTOR'S CLOSING ARGUMENT

Lastly, defendant contends that the prosecutor committed misconduct during closing argument when he said:

> Thank goodness [EE] was the mature, responsible 13[-]year[-]old she was, or we'd be dealing with a completely different issue today. She was smart enough to say no, I'm not going to do this stuff. And eventually say, hey mom, I'm worried about a sister who's up there.

In defendant's view, the first sentence of the prosecutor's argument was an improper emotional appeal to the jury, leading it to speculate on what could have happened had EE not reported defendant's messages.

Because defendant did not object below, this claim of prosecutorial error is not preserved. An unpreserved claim of prosecutorial error is reviewed for plain error. *People v McLaughlin*, 258 Mich App 635, 645; 672 NW2d 860 (2003). Plain error exists when the defendant establishes that: "(1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected [his] substantial rights." *Id*. "Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

"Generally, prosecutors are accorded great latitude regarding their arguments and conduct." See *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (quotation marks and citations omitted). Prosecutors "are free to argue the evidence and all reasonable inferences from the evidence as it relates to [their] theory of the case." *Id*. (quotation marks and citation omitted).

Viewed in context, the prosecutor's remark was supported by the evidence rather than a blatant appeal to the jurors' emotions. Notably, the trial court instructed the jurors that the lawyers' remarks were not evidence and that they were to decide the case based on the evidence admitted. Once again, the jury is presumed to have followed its instructions, *Zitka*, 335 Mich App at 348, and defendant is not entitled to relief.

Affirmed.

/s/ Sima G. Patel
/s/ Thomas C. Cameron
/s/ Anica Letica